Case number 17363, Jerry Martin and others, versus Behr Dayton Thermal Products, LLC, and others, Mr. Cohen for the audience. Good morning. May it please the court. I'm Ed Cohen, and I represent the appellant, the defendant below, Old Cargo, LLC, a nominal defendant, and formerly known as Chrysler, LLC. This morning I'm also speaking on behalf of the other appellants, the defendants below. The question before the court is this. Can a court certify issues under Rule 23C4 for class treatment when that same court has already determined that those same common issues do not predominate over individualized issues in a liability-only context? And the answer is no. Here, our district court rigorously analyzed the seven proposed specific common issues under Rule 23B3 to determine whether a liability-only class could be certified. Are these not a subset of the issues that the court considered in its full review of predominance? The answer is no. In the judge's opinion, he lays out seven specific verbatim issues that he analyzed under Rule 23B3, and then he takes the exact, precise, verbatim seven issues and says, oh, well, even though I didn't find predominance, I'm going to go ahead under this separate rubric, 23C4, I can just do this, so I'm going to go ahead and certify the exact same seven issues he just analyzed in a liability-only context. But when he just analyzed them, they predominated over some other issues, right? That's what predominate means, right? The individualized issues predominated over the common issues in his analysis. Right, but those individualized issues weren't in play the second time he's making the determination, right? No, I... Predominate sounds like there's one group that rules over the other. That's what predominate means, right? Correct. Like domination, you've got to have a dominator and a dominancy. Of course, of course. Okay, so if you undertake one inquiry and you see that one group predominates over the other, that doesn't mean that if you have a new construct where the items that are being predominated over are no longer present, you wouldn't have predomination. I agree with you. That's the analysis, right? But that's not what happened here in this case. I understand that in a theoretical sense, and there's a lot written on this issue where people talk about, can you use nimble use? But you just seem to be saying that because there was one predomination, it controlled the second one, but the second one's a different inquiry. That's what I'm asking. The answer to that is, Judge, I disagree with that respectfully. It's the exact same inquiry. He already did the same inquiry he would do under C4 as he did under the B3. There's no change. Both are liability only with a narrow already pared down. The case started with 11 causes of actions. They held six or seven to the side. I understand that. They pulled damages out when they couldn't proceed with class-wide damages. They pulled damages out. It gets pared down further. And then they present only on liability-only issues of five causes of action. I believe it's five. And so they've already pared it down. Just because you've already pared something down doesn't mean you can't pare it down more. Understood. If you look at Judge Rice's part of the C4 opinion, you won't see, at least I don't see, how he's comparing it to anything different than what he did last time. It would still be, there has to be a comparison. C4 on its face sounds like he can do it, right? It says that an action may be brought or maintained as a class action with respect to particular issues. Why is that not the end of the ballgame? It can't be the end of the ballgame because every circuit court that's analyzed this issue has held that you have to have a rigorous analysis of predominance and superiority. By the way, there's no superiority analysis whatsoever. And that can't be gleaned from the tea leaves. Your basic argument is that you want to accept the purportedly narrow view test and your opponents suggest they want the broad view test. I disagree with that, Judge. In the Randleman case, this circuit held you didn't need to enter the fray between the circuits split. And in our case, respectfully, you don't need to enter the fray either here and decide narrow or broad. In this case, because of this particular opinion and the analysis of the subset that Judge Rice has already thoroughly analyzed, it's already been done. So this case, it wouldn't pass muster under the narrow, the Castano, the Fifth Circuit approach, or the broad, or if you defer. Let's assume, counsel, that we disagree with that analysis. And if we do, then what is your position? Disagree with? We disagree that this was not a further delineation of issues that are appropriate as an issue class. So let's say that he has done that. So what is your argument as to why he cannot do that in this case? Do you place your whole reliance in the case on the fact that the judge had already made this decision and then cannot certify issue classes thereafter? I guess I have two responses. I rest our whole grounds for reversal in toto with the relief being that the case proceed with no class process, individualized cases, on the point you made. The fallback position is that the case should at a minimum, at a minimum, be remanded so Judge Rice can set out so we don't have this discussion we're having and kind of be wondering, did he or did he not analyze it? Our position, he clearly. Why isn't the record adequate for this Court to make that analysis? Why is it not adequate? Why is it not adequate for this Court to make that analysis? Because there's no indication whatsoever of how this would be superior, and in fact, it wouldn't be superior. Judge Rice expressly said, I'm not even analyzing superiority. Every circuit court that's analyzed the split on both sides of the split, both sides of the split, have said there has to be a showing. It has to be presented. You're past the predominance issue now, then, right? Pardon me? You're arguing in the alternative now that there's no superiority. You're not arguing the predominance issue anymore. Well, our position is that… That's a sequence of your argument. I'm trying to see where you are. I'm still hung up on your predominance argument. You're just putting that aside for the moment and moving over to superiority. Well, I'm saying that there's two arguments in response to Judge Strange's question, which is that if you accept our predominance argument, it should be reversal outright. If you accept the superiority argument, it would be a remand with further proceedings so the Court can do what's required of a district court to set forth the superiority. And what I'm saying is, in this case, I don't see how you could ever do that. But he hasn't done it, so we don't know. His introduction into the analysis of the seven class issues that discussed why it was appropriate to have this kind of provision, you think is inadequate because it did not use the word superiority? I don't think it's inadequate because he didn't use the word superiority. That would be putting too much power into specific words. But I think it's inadequate because it is inadequate in the sense of it has no depth. It has no meat. It was never addressed. He said expressly he's not addressing superiority in any context. That hasn't even been analyzed by the parties. The plaintiffs who carried the burden on this issue, of course, didn't present a trial brief. Nothing has been analyzed even in that. And so, no, he came up with two sentences just kind of, I think, sort of, this is why I would do this. But that's not analyzing superiority in a way that, from my read of the case, is passion mustard. It's a classic toxic tort superfund kind of case where you've got, what, 540 separate parcels. And why would it be to your client's advantage to litigate some of these seven common issues 540 times as opposed to a class action approach to those common questions? Well, one, because the proposed approach, the ordered approach by Judge Rice doesn't comport with Rule 23. And it would also violate the Seventh Amendment and the Reexamination Clause. You can't do what he proposed in this context. That's the whole reason it's not adequately explained. You can't do what he proposed because under Ohio law, as he explained in his B3 analysis, injury in fact is part of liability. And so you have causation. And I understand some cases have said, oh, we can wait on causation. I get that particularly in the Whirlpool, which is, no pun intended, a clean case. One defendant, one issue. The Young case, one defendant, one issue. It's narrow, a cohesive class. Those opinions make sense to do this. This case, Your Honor, is very, very different. There's three different defendants, two of them in the same facility at different time periods. The question of when you were negligent, how you were negligent, where your contaminants went. Why aren't all of those issues resolvable as initial issues, and then the question of liability or the question of harm is separate? Why would you want, as Judge Gilman has asked, 540 cases that have to present extensive expert testimony, which is exactly what these cases are based on, about the location of the plumes, the testing of the homes, vapor versus vapor under the strata? Why aren't those all preliminary questions that can be resolved and save this court and the district court an immense amount of time? The first answer is, I believe, respectfully, that's what Judge Rice has already analyzed and determined that you can't. I think the mistake here of law, the abuse of discretion, is that Judge Rice mistakenly believes that he can order the C-4 class irrespective and irregardless of predominance. And that's not the law. Your time is up. Are there further questions? Thank you, Counsel. Good morning, Your Honor. Please, the Court. My name is Ned Miltonberg. I represent the people whom the defense counsel didn't speak about and the defendants would care not to think about. I want to actually begin by picking up on a point that Judge Gilman and Judge Strange pointed out to, which is that if this case is not tried as a class action, it will be 540 separate determinations, each one of which will go over and over and over again, the common issues that were separated that are quite expert intensive. I submit there wouldn't be 540 cases. Picking up on the language that this Court wrote in Whirlpool, both Whirlpool 1 in 2012 and Whirlpool 2 in 2013, there would be no individual cases because the cost of such cases means that there would be no litigation whatsoever. This case is not a question about whether there would be class action or 540 individual actions. The damages are such, according to our experts, there are 540 parcels, as Judge Gilman pointed out, each one of which are estimated to be worth $49,000. The damages to those parcels, the property damage to the value of those parcels is approximately $20,000. Judge Posner pointed out that only a lunatic lawyer would file suit. You're still going to have to do that though, right? You're not going to win until you go and have the individual suits anyway, right? That's right, Your Honor. There will be individual suits on the individual questions that were segregated out. So you're not going to be arguing that... No, that's correct. But there will only be 540... They're still going to have to get a lawyer and argue them one by one, right? Well, only if a lawyer originally brings the case and wins on the seven issues the Court below certified as common issues. If those issues are not litigated, because it's too expensive... They'll be litigated as a class action or they will not be litigated at all, the seven common issues. They're very expert intensive. They can start on the questions about whether Chrysler... You say this is going to cost too much for any individual to bring. And the group of decisions that you're defending here include, for many of the issues that are including difficult issues, you're going to have to do them individually. Well, that's right. Certainly the individual cases, even if we win on the liability class issues, those cases will still be very expensive. That's right, Your Honor. I'd like to get back to the points... What you're addressing is superiority? Is that where you are in your argument? This is the superior methodology of resolving this? Yes, Your Honor. That's correct. And the reason we say that... We acknowledge Judge Rice's opinion was not clear. There was no discussion whatsoever. The defense counsel was right. There was no discussion about superiority. The court assumed, as many other courts have assumed, and we pointed this out in our brief, that if you have predominance, you automatically have superiority. They said it first. They cited in their brief Mr. McLaughlin's treatise on class actions, which said if you have no predominance, it's impossible to have superiority. But they failed to pick up the very next sentence, which said, conversely, if you have predominance, it's hard to imagine how a case would not be manageable. You still have to address it, though, right? Yes, Your Honor, you do have to address it. The Supreme Court didn't address it. That's correct. Don't we have to send it back and have them address it at a minimum? You certainly have the right to send it back. I'm sorry, Your Honor. What I meant to say was, of course, it could be sent back, but the purpose to be served would be rather, I think, would be rather minimal. The court would turn around and say, as courts before have said, if because there's only predominant issues, picking up on what the Eleventh Circuit said and what McLaughlin's treatise says, we therefore find that it's impossible to imagine that it would not be a superior form of action. The defendants have already conceded. If there were only one issue out of hundreds, would it still be superior? And if you looked at that issue only, it would predominate because there wouldn't be any other issues to compare it to. Is that automatically superior? It depends on what the issue is, Your Honor. If, in this case, the issue is – In this case, the issue – That would pretty clearly not be a superior way to do it. Well, the issue – A whole class action over some minor issue. In this case, there's one overall liability issue, which the court – I'm asking a hypothetical. Okay. If there's one minor issue. If there's one minor issue in that – I'm sorry. If there's one minor issue that's a class issue, you have to have a separate class action. Is it appropriate to have a separate class action or – No. Wouldn't the argument be that that's not a superior way to do it, even though if you only look at that one issue, it predominates because there's nothing for it not to predominate over. You're right, Your Honor. That would not be an efficient use of judicial resources. So don't we have to have an evaluation of that kind of inquiry under the superiority analysis from the district court first? But under the circumstances of this case, Your Honor, the court has already determined that there are – we can determine there are seven issues that predominate. And you were absolutely correct on your initial comment. When there are only common issues and there are no individual issues, those seven common issues automatically predominate. That's what every – I was asking you if that was the case. I wasn't saying that. Okay. But if you assume that's the case, you just said that doesn't answer the superiority inquiry. Well, I – I gave you an example where that was the case and you said there it would not be superior. That's the problem with dealing with hypotheticals, Your Honor. I think in the context of – Oh, okay. So you want to take it back now? Are these seven common issues minor or major in your opinion? I think they're very major to this case. They are essential to this case. Why shouldn't – well, in my example, the one issue was essential. It was just a small issue. You would say, at least arguably, that it wasn't superior even though it predominated if you only looked at that one issue. It depends on how – there's predominant issues and there are essential issues. They can be both or they can be one or the other. They can be both. In this case, I think they're both predominant and they are essential. And they are essential to litigating this case fairly, both in terms of judicial resources and in terms of – What about superior? Pardon me? Superiority is the inquiry now, right? Superiority is essentially a question of manageability. I mean, at least clearly in this case. So you have a manageability problem, which goes to the same kind of questions that Judge Gilman was asking earlier. If it's a manageability problem, then you want to – even though they predominate in the esoteric – or in the formalistic sense that they predominate over something that isn't even there, you still have a question of whether they're superior even though they predominate. That's all I'm asking. So if you agree that there's a superiority, that there can be lack of superiority even though there is predominance, which I think you've now agreed to, then you have to argue something more than predominance in order to demonstrate superiority. You're right. And you seem to be arguing for superiority on the grounds that there's been a finding of predominance. Well, that's what I am arguing, Your Honor, because – But you've conceded that that's not enough. I – in the context of this case, Your Honor, I do think it's enough. In the context of the seven issues that have been – But shouldn't that context have been something found by the district court? You say the context, and now you're going to give me some other argument. Because there's no – That argument needs to be presented to the district court. Because as far as we've been able to determine, Your Honor, neither we nor the defendants have been able to find a case, certainly they haven't cited one, in which you need to find – after you've found predominance, you also need to find – make a specific, particular finding about superiority. That's exactly – You don't need to – if you find predominance, you don't need to make a separate finding of superiority. We haven't found a case – Even though – that's your position, though. Even though your position is also that predominance does not necessarily require superiority. In a case like this one – What is it about this one that's different? Well, it's – because – Because it's seven instead of one? Because there's no – yes. Because it is – it's not seven versus one. It's seven versus nothing. There are no other – No, I mean, because it's one – it's seven issues that predominate over nothing versus one issue that predominates over nothing. Again, Your Honor – You're not following the question. It's hard to get an answer. I'm sorry, Your Honor. I'm unclear about this. May I move on to the jury – May I move on to the other questions? I'm not sure that I can belabor this anymore to your satisfaction. All right. That's fine. I just – I don't know the answer. The defense counsel made a number of other points that I'd like to address. First off, they seem to think that – they said that every court is – every circuit has rigorously analyzed the C3 – C4 and B3 requirements. That's true. But they're wrong in the next step where they say that every court has held that applying that rigorous analysis, you must also make a separate finding about predominance. That's just not so. The only court that even suggested that is the Castano Court in 1996, which was quickly criticized by the Nassau County Court and by Valentino and by Gunnels and every other court that's weighed in. In fact, many courts that have not even specifically addressed C4 have essentially recognized the logic of that position, including both the Butler Court, which they – Judge Posner's decision in Butler, which they criticized because it doesn't mention C4. And frankly, this Court's decision in Whirlpool 1 and Whirlpool 2. We are not the ones who characterized those decisions as C4 cases. The expert – excuse me, the law professor whom they cited as providing the correct analysis of Castano, which she said was the proper interpretation, Professor Laura Hines, said that Butler and Whirlpool are among the cases – among the dominant positions that said you do not need to have a separate analysis of predominance. But don't those cases – isn't even the broad view merely a change of timing on the determination of predominance? Because when you're in C4, it becomes – there is still a predominance analysis under C4. Is that not correct? Even under the broad view? Your Honor, it was correct. And I think in some circuits it still may be correct. That was the initial position of many courts, including Gunnell's, that you needed to get – once you establish – once you determine that B3 predominance did not exist, you had to go back and then you want to try it under C4. You could then go back and say we'll go back to C3 – to B3 and see whether B3 predominance exists. More recent courts – After you define the individual issues. But most recent courts have dispensed with it. They say there's no sense. There's no logic to doing that. Which is why we cited the Alvarez case from the Ninth Circuit and the Sharon case from the Second Circuit, a 2013 and a 2015 case – excuse me, 2015 and 2013 cases respectively. Both of which we can dispense with the B3 predominance analysis altogether. Even if – even if you don't establish predominance under B3, you can proceed with C4 without having to go back and determine whether that predominates as well. Those cases – because there's no sense in doing that. That's the same sense of going back and saying can you really determine whether seven individual cases of liability or seven individual issues, common issues, minus zero really equals a predominance. There's no sense in doing that. Turning quickly to the jury question, which I think is important. Defendants point out that there are two possibilities. Their Seventh Amendment rights are implicated by the fact that the district court suggested that if the plaintiffs win on the seven common issues, then if and when that happens, the court would be inclined to appoint a special master or in the alternative would have individual jury determinations regarding each of the 540 parcels. Defendants object to both of those notions. On the notion that having a special master deprives them of their Seventh Amendment rights. This court addressed that issue in Olden and said if they don't like it, they can certainly opt for individual trials. Most other courts saw it – every circuit that I looked at and that we cited them said of course you're going to have a special master. It's contemplated in the rules. But even if you don't have a special master and you decide to go with individual trials, the way this – the critical question is not whether there are some evidentiary points that are common to both the class action and the individual cases. Whether it's the first jury that discusses viability and the common issues and the subsequent individual trials that discuss proximate cause, injury in fact, and damages. The bar is not whether there's evidence. It's whether the same issues are being litigated. And if you look at what Judge Rice did, he very carefully wrote the seven common issues in such a fashion that they cannot possibly implicate individual damages. They're written in such a fashion, and I can read them to you, but essentially they – Isn't that part of the analysis that would be covered by superiority? I'm struggling with this because it seems to me that Judge Rice was addressing methodology and functionality when he said here's what I'm going to do. I'm going to put seven issues down and those seven issues hover over the individual issues, applying to each but not necessarily dispositive. That's right. So this overarching class predominates in the key underlying issues. And then I'm going to take up those seven issues in this predominance and then we're going to work through a special master methodology to resolve the final issues of liability, well, of damages actually. Yes. He said that was a possibility. He didn't definitively say he was going to do that, but he said he was inclined to do that. If and when. And if that doesn't relate to why it's superior to do it this way, what does that relate to? I think you're right, Your Honor. It does relate to superiority as well. That's a superior way of dealing with the issues. He didn't do it in that context, though. He was just telling you what was coming next. That's right, Your Honor. Thank you. Proceed. Okay, thank you. First, I realize I didn't really respond to one of your questions, Judge Gilman. I apologize for that. You asked why would the defendants prefer, why are we wanting to do it with individualized cases. And the answer is twofold. One, because this is not a case like Whirlpool or Young or many of the other cases where they have correctly and wisely and prudently held that a C-4 class is appropriate. This one is not, so it's repugnant to Rule 23, period. I really struggle with that. How can it be repugnant to the concept of a class action for people who have been harmed in effectively the same way by an environmental pollutant who all live in a neighborhood that is heavily poor and heavily racially, is a heavy racial demographic. And the key issue in resolving whether their property can be protected or whether there is a remedy for these individuals is whether they can bring either by a class, a large group, without the capacity to individually litigate the kind of expertise that is required. And so they combine together, it enables them to have the major issues litigated so that there can be an understanding of how their property was damaged. And the court can do it in one broader fell swoop. And then those issues can be resolved. It seems to me that is the essence of why class actions were created. Respectfully, Your Honor, in this particular case and in many cases, class actions are the right way to proceed. I've been on the plaintiff's side as a lawyer and for a class action. They have their place. They have their role. But the reason there's this rubric, there's the reason that there are so many cases, is because not every case turns out to be more efficient for the plaintiffs, for the defendants, and for the courts. Well, how is this one not more efficient? You guys have been litigating for 10 years. 10 years. And there has been fights over discovery and you opposed opening back up the stay. And so we're 10 years into this. Could one of those lot owners, that $40,000 lot, have litigated this for 10 years?  Well, no, answer that question. Could that racially segregated and poor community, individuals in it, have litigated this case for 10 years? The answer to that, I believe, Your Honor, is yes, they could, because the plaintiffs have 20 or 30 people signed up, so collectively they could do what I was going to propose for the efficiency purposes, if we ever got to the point upon remand, I suppose, of analyzing superiority. We would look at this. But in this case, it would be better to do these cases with some bellwether cases. And the reason that several six or eight bellwether trials, it's going to be difficult either way, I think we can all admit that. Did you propose that to the court throughout these 10 years? We would like to do that. No, did you propose bellwether litigation to the court below during the 10 years of this litigation? Because the plaintiff carried the burden. No, not because. Did you or did you not? I honestly, Judge, can't remember if we did or didn't. If we would have, it would have been in an informal conversation. We didn't in any formal papers. There was no trial brief submitted, and therefore, no, we didn't respond to any trial brief. So the issue hasn't been fully vetted. Or no recommendation to the court that this is one way to proceed on these cases? Again, I don't want to say something that's not accurate. I don't remember if we did or didn't. I know we've had discussions, but I can't remember if those were only with opposing counsel or with the court. Have you agreed to that with opposing counsel? To do bellwether cases? To do bellwether cases. I know that we can agree to that. Have you made the offer to opposing counsel to do bellwether cases? I'm happy to. No, not now. Have you already in the 10 years that you have litigated made that offer? The short answer is, Your Honor, I know we have discussed it. They haven't seemed interested. As I recall, I don't remember the specific conversation, and I apologize for that. I know it has come up. I know we've kicked it around. But I don't know whether it was an offer in that sense because I don't think we got there. And I don't want to say something that misleads and I just can't remember. I know we have had the discussions, and I apologize. Over the 10 years, I just don't remember the specifics. But I can just tell you that in looking at this case, if we fully vet the issues, including the issue of what the judge raised as common issue number seven, which is negligence in the timing of the remediation, that has a temporal context. You can't do that without an individualized inquiry. And so that's where the facts will get intertwined. That's where it can't be superior. And that's why . . . No, I'm looking at the . . . That is an activity that could be undertaken without regard to who has been affected by it. Could it not? I disagree, Your Honor. And it's because the question of the timing of remediation . . . Thank you for asking. The timing of remediation, hypothetically, if a company spills chemicals here and a person lives right next to them, the negligence, the timing, the temporal factor in how fast you did the remediation as to this person, you probably better do it pretty fast because if the contaminants are moving towards that person's house and he's close by, there's a temporal thing as to whether you're negligent. If you took three days, that might be a problem if they're already on that person's property. But this bloom has people a mile away. And so when you have people a mile away, the question of whether if you just, for example, hypothetically took three days, it might be a negligence or you could argue a problem as to this property owner. But the one who's a mile away . . . I think we've fairly addressed that. I just am struggling with that answer because if the question is whether you investigated and remediated, the defendants could have started wherever they pleased and just done remediation on where the problems lay. And that's what Issue 7 is asking about. Did you undertake anything? Are you asking did they do any remediation? Yes. Did they do . . . No, I'm asking is that not an overarching question? Did you undertake it? No, Your Honor. And that's the answer. It doesn't matter. We aren't yet to the damages issue. We're at whether you did anything about what the problem was. The timing in which you do a remediation is how you're negligent. If you did a great remediation but you did it 10 years later than you should have, then there's going to be an . . . It would make a difference for the person who's adjacent versus a mile away. And that's where you get into injury in fact. I'm going to stop now. Thank you. I think your position is clear on that point. Thank you, Your Honor. Any further questions? No. Thank you, counsel. Thank you very much. The case will be submitted.